IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| GLENN MATTHEWS,<br><br>                Plaintiff,<br><br>vs.<br><br>PENNSYLVANIA LIFE INSURANCE COMPANY,<br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:12-cv-896-TC<br><br>Judge Tena Campbell |

Plaintiff Glenn Matthews brought this action against Pennsylvania Life Insurance Company for recovery of benefits for permanent total disability under the Accidental Benefits Policy (the Policy). Constitution Life Insurance Company (Constitution Life), assignee and obligor to the rights and responsibilities of Union Bankers Insurance Company, susccessor to Defendant Pennsylvania Life Insurance Company, has filed a Motion for Summary Judgment. In its motion, Constitution Life argues that Mr. Matthews has failed to meet his burden of proving that he is qualified for coverage because he cannot meet the requirement under the Policy that his disability is a result of an accidental injury which he has suffered "directly and independently of disease or bodily infirmity, or any other causes." (Def.'s Mot. for Summ. J., Docket No. 45 at 1-2.)

The court agrees with Constitution Life and GRANTS its Motion for Summary Judgment.

**FACTS**

The facts of this case have been thoroughly detailed in the parties' motions and

memoranda.[1]  The court will repeat them here only when necessary to explain this order.

## ANALYSIS

I.  Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."  N. Natural Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 629 (10th Cir. 2008).

Mr. Matthews must prove that he is entitled to coverage by a preponderance of the evidence.  See Winchester v. Prudential Life Ins. Co. of Am., 975 F.2d 1479, 1487-88 (10th Cir. 1992).  Constitution Life bears of the burden of proving that a limitation or exclusion applies. Blair v. Metro. Life Ins., Co., 974 F.2d 1219, 1221 (10th Cir. 1992); McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1205 (10th Cir. 1992) (citations omitted) ("It is a basic rule of insurance law that the insured carries the burden of showing a covered loss has occurred and the insurer must prove facts that bring a loss within an exclusionary clause of the policy.")

II.  Mr. Matthews Cannot Show That His Disability Resulted Directly and Independently of Disease or Bodily Infirmity

To recover under the Policy, Mr. Matthews must be totally disabled due to an injury as defined by the Policy: "**INJURY** means accidental bodily injury sustained: (1) directly and independently of disease or bodily infirmity, or any other causes; and (2) while this Policy is in

---

[1] See Def.'s Mot. for Summ. J., Docket No. 45; Pl.'s Opp'n to Mot. for Summ. J., Docket No. 53; Def.'s Reply to Pl.'s Opp'n to Mot. for Summ. J., Docket No. 60.)

force." (Accidental Benefits Policy, Ex. 1 to Def.'s Mot. for Summ. J., Docket No. 45-1 at 10 .)

The Tenth Circuit Court of Appeals has held that the phrase "directly and independently of all other causes" is not ambiguous and is given its plain and ordinary meaning in the context of the insuring clause. See Pirkheim v. First Unum Life Ins., 229 F.3d 1008, 1010 (10th Cir. 2000). Under a similar accidental insurance policy, the Tenth Circuit court found that "the loss must result directly from accidental bodily injury" and "the loss must result independently of all other causes." Id. at 1010-11.

Other courts have interpreted similar clauses in accidental insurance policies and have divided them into three separate categories: (1) when an accident causes a diseased condition which, together with the accident, results in the injury complained of, the accident alone is considered the cause of the injury; (2) when at the time of the accident, the insured was suffering from a disease, but the disease had no causal connection with the injury resulting from the accident, the accident is considered the sole cause of the injury; and (3) when at the time of the accident, there was an existing disease which, combined with the accident, resulted in the injury, the accident cannot be considered as the sole cause, or as the cause independent of all other causes. Tucker v. New York Life Ins. Co., 107 Utah 478, 482 (Utah 1945) (citations omitted).

There is no dispute that Mr. Matthews currently suffers from low back pain and pubic symphysis diastasis.[2] Consequently, the court looks to whether Mr. Matthews' disabling back pain arose directly from the riding accident and is attributable to no other causes.

---

[2]"Pelvic diastasis" or "pubic symphysis diastasis" is an abnormal widening of the space between the two pelvic bones. (See American Fork Hospital Medical Records, Ex. 4 to Def.'s Mot. for Summ. J., Docket No. 45-4 at 2, 4.)

3

Mr. Matthews admits that before the accident, he "had some non-symptomatic and non-disabling [Degenerative Disc Disease] (as most humans beings have at his age) <u>and some intermittent low back pain</u>." (Pl.'s Opp'n to Mot. for Summ. J., Docket No. 53 at 5 (emphasis added); <u>see also</u> Expert Letter to Pl.'s Counsel, Ex. 5 to Def.'s Mot. for Summ. J., Docket No. 45-5 at 2 ("Glenn Matthews presents today with an interesting history of back and pelvis pain. He states that he had nondisabling back pain for a period of time prior to an injury that occurred in October 2002.")) Mr. Matthews also admits that his "pre-existing degenerative disc disease and low-back pain was exacerbated by the 2002 horse-back injury." (Pl.'s Opp'n to Mot. for Summ. J., Docket No. 53 at 28.) Additionally, Mr. Matthews admits that his hip injury "caused him to alter his gait, which has <u>further exacerbated his back condition</u>, or "flared-up" his previous back condition.[3] (<u>Id.</u> at 2, 27.)

Despite these admissions, Mr. Matthews alleges that his disabling back pain was caused only by his pelvic symphysis diastasis sustained in the horseback riding accident. He supports this claim with his own declaration that he knows his body and believes that his own "testimony tends to establish that his reports of pain, even when described as low back pain, relate to his pelvis and [Sacroiliac (SI)] joint injury and that any injury to his lower back that resulted in disability are also caused by his acute injuries." (Pl.'s Opp'n to Mot. for Summ. J., Docket No. 53 at 53.) He also supports this claim with statements from Michael E. Callahan, M.D., of the Central Utah Clinic.

---

[3]The court notes that the record reflects that a horse kicked Mr. Matthews in the back approximately twenty to thirty-five years before his accident of falling off of another horse. But neither party has presented any medical records relating to any injury or pain that may have been caused by the first horse-related incident.

Dr. Callahan stated that Mr. Matthews' "SI joints [] show degenerative disease due to [the riding] injury" and that he "has had progressive degenerative disease in his lumbar spine following [the riding] injury and the injury to his pelvis." (Central Utah Clinic Medical Letters, Ex. 10 to Def.'s Mot. for Summ. J., Docket No. 45-10 at 22-23.)

Dr. Callahan also noted in the medical evidence that Mr. Matthews experienced problems with his back even before the injury. After Mr. Matthews' doctor's appointment on January 13, 2004, Dr. Callahan wrote that "[Mr. Matthews] is seen today in follow-up for his pelvis and also for low back pain. This was injured about fifteen months ago with injury to his pelvis. <u>He had some trouble with his back going out even before he had the injury, but it has been a little more aggravated and a little more painful since he has been back at work since the accident</u>." (American Fork Hospital Patient Medical Information, Ex. 7 to Def.'s Mot. for Summ. J., Docket No. 45-7 at 9 (emphasis added).) And Dr. Callahan's statements about Mr. Matthews' degenerative disease in his SI joints and spine do not specifically state that Mr. Matthews' disabling back pain was caused solely by the horseback riding injury, independent of his prior back condition. These statements are not inconsistent with Mr. Matthews having a previous back condition that was exacerbated by the horseback riding injury, and they are entirely consistent with the other medical evidence in the record described below.

At the time of his injury on October 07, 2002, Emergency Department physician Val D. Dunn, M.D., described Mr. Matthews' ailments after he was admitted to American Fork Hospital:

> PELVIS: Three separate AP views of the pelvis were obtained and show abnormal widening of the pubic symphysis. I do not see a fracture of the pelvis. Both SI joints seem to be somewhat wider than average as well. The appearance of the pelvis suggests that the patient probably has some developmental diastasis of the

5

> symphysis pubis and the [Acromioclavicular] joints may look abnormal as a result. There do <u>appear to be some degenerative changes of the spine. I cannot entirely exclude the possibility that this might be exaggerated by an acute injury but I doubt that the appearance is acute</u>.

(Medical Records, Ex. 2 to Def.'s Mot. for Summ. J., Docket No. 45-2 at 62 (emphasis added).) Emergency Department physician Leonard Brunsdale, M.D., also stated that "[t]he diastasis of the symphysis pubis does appear abnormal. This <u>could be a chronic thing</u> as he has had no previous hip x-rays, although certain with his history I <u>would suspect that this is an acute orthopedic injury</u>, especially since it is too painful for him to bear weight." (<u>Id.</u> at 64 (emphasis added).) Taken together, the medical evidence tends to show that Mr. Matthews' diastasis of the symphysis pubis was an acute or recent injury, while the signs of degeneration in the spine were more likely chronic or long-lasting.

Mr. Matthews' own expert, Joel T. Dall, M.D., gave his opinion about Mr. Mathews' injuries. He separated Mr. Matthews' accident-related injuries and symptoms from his non-accident related injuries and physical conditions. Dr. Dall described Mr. Matthews' <u>non-accident related complaints</u> as low back pain. Dr. Dall could not determine the precise cause of the low back pain and stated that "[t]he precise etiology [of Mr. Matthew's low back pain] is unknown at this point." (Dall Expert Report, Docket No. 21-1 at 12.)

When asked to describe in his expert report what impact or synergistic effects the accident-related diagnoses have had on Mr. Matthews' non-accident related diagnoses, Dr. Dall stated that, "[i]t is plausible, but not established, that Mr. Matthews' initial injury (the saddle injury) <u>had an effect on his pre-existing low back pain</u>." (<u>Id.</u> at 15 (emphasis added).) And when asked "Did Mr. Matthews' accident related diagnoses, based solely on objective medical evidence, aggravate or

6

enhance/increase the negative impact of the non-injury related conditions?" Dr. Dall stated that he suspected that the accident related diagnoses did aggravate or enhance Mr. Matthews' non-accident related conditions, even though his suspicion was not based on any objective medical evidence. (Id.)

All of the physicians who either treated Mr. Matthews or reviewed his medical records could not determine a precise cause of his back pain and indicated that his preexisting back condition may have been exacerbated by his riding accident. Not one physician concluded that the riding accident was the sole and independent cause of Mr. Matthews' back pain.

Because the undisputed evidence shows that the horse riding accident, at most, exacerbated or contributed to Mr. Matthews' low back pain and degenerative disc disease, the court concludes that the accident was not the sole and direct cause of his disabling condition.[4]

### III. Constitution Life Did Not Act in Bad Faith When It Terminated Mr. Matthews' Insurance Benefits

Mr. Matthews alleges that Constitution Life did not fairly evaluate his claim for accidental disability insurance benefits under the Policy, did not act promptly in resolving his claim, and did not act reasonably in dealing with him.

An allegation of bad faith is "merely the inverse of the implied covenant of good faith and fair dealing that inheres in all insurance contracts." U.S. Fidelity v. U.S. Sports Specialty, 2012 UT 3, ¶ 20, 270 P.3d 464. In the insurance context, the implied covenant of good faith and fair

---

[4] Because the court grants Constitution Life's Motion for Summary Judgment because Mr. Matthews cannot show that his disability resulted directly and independently of disease or bodily infirmity, it will not address whether Mr. Matthews received the regular and personal care of a physician as required by the policy.

dealing contemplates "that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will therefore act promptly and reasonably in rejecting or settling the claim." Id. (quoting Prince v. Bear River Mut. Ins. Co., 2002 UT 68, ¶ 27, 56 P.3d 524).

When an insurer receives an insured's claim for benefits, the insurer must respond reasonably and objectively, "diligently investigate the facts," "fairly evaluate the claim," and "act promptly and reasonably in rejecting or settling the claim." Young v. Fire Ins. Exch., 2008 UT App 114, ¶ 22, 182 P.3d 911 (quoting Billings v. Union Bankers Ins. Co., 918 P.2d 461, 465 (Utah 1996)). The primary concern in this context is that the insurer acts reasonably when making its determination regarding the insured. See id.

"If an insurer acts reasonably in its evaluation of a claim, it cannot be liable for violating the covenant, even if the insurer initially denies a claim that is later determined to be covered by the policy." U.S. Fidelity, 2012 UT 3, ¶ 20, 270 P.3d 464 (citing Prince, 2002 UT 68, ¶¶ 27-28, 56 P.3d 524). The denial of a claim is reasonable if the insured's claim is "fairly debatable." Prince, 2002 UT 68, ¶ 28, 56 P.3d 524. "If an insurer denies an 'insured's claim [that] is fairly debatable, [then] the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so.'" Id. (quoting Morris v. Health Net of Calif., Inc., 1999 UT 95, ¶ 7, 988 P.2d 940). "If the evidence presented creates a factual issue as to the claim's validity, there exists a debatable reason for denial, . . . eliminating the bad faith claim." Young, 2008 UT App 114, ¶ 22, 182 P.3d 911 (quoting Prince, 2002 UT 68, ¶¶ 27-28, 56 P.3d 524).

Constitution Life has submitted evidence that it diligently investigated the facts for Mr.

Matthews' claim for benefits arising out of the October 2002 accident. Constitution Life gathered Mr. Matthews' medical records from his doctors, had a medical director review the medical records, and ordered several Functional Capacity Evaluations, one of which was completed by Dr. Aubrey Swartz on November 9, 2010. Constitution Life also immediately began paying benefits to Mr. Matthews as it thoroughly investigated his claim. After nine months of investigating his claim, Constitution Life determined that Mr. Matthews did not meet the Policy requirements because his disability was not directly caused by an accident, independent of all other diseases or bodily infirmities, and because he was not receiving regular and personal care of a doctor.

This evidence defeats Mr. Mathews' claim of bad faith.

ORDER

For the foregoing reasons, Constitution Life's Motion for Summary Judgment (Docket No. 45) is GRANTED.

SO ORDERED this 29th day of July, 2014.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge